UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN OEUR,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 11-00370-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On March 9, 2011, San Oeur ("Plaintiff or Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits and Supplemental Security Income benefits. The Commissioner filed an Answer on September 1, 2011. On November 8, 2011, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 53 year old male who applied for Social Security Disability Insurance benefits and Supplemental Security Income benefits on December 17, 2008, alleging disability beginning January 1, 2007.  (AR 8.)  Plaintiff has not engaged in substantial gainful activity since the alleged onset date.  (AR 10.)

Plaintiff's claims were denied initially on March 19, 2009, and on reconsideration on May 13, 2009.  (AR 8.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Joseph D. Schloss on June 8, 2009, in San Bernardino, California.  (AR 8, 34-56.)  Claimant appeared and testified with the assistance of a Cambodian interpreter.  (AR 8.)  Medical expert Dr. David Glassmire and vocational expert ("VE") Sandra M. Fioretti also appeared and testified at the hearing.  (AR 8.)  Plaintiff was represented by counsel.  (AR 8.)

The ALJ issued an unfavorable decision on July 15, 2010.  (AR 8-19.)  The Appeals Council denied review on February 3, 2011.  (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the only disputed issue that Plaintiff is raising as a ground for reversal and remand is as follows:

1.  Whether the ALJ has met the burden of proof at step five of the sequential evaluation process in finding Plaintiff capable of performing other work as a kitchen helper, industrial cleaner, and toy assembler.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v.

Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141.

Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date. (AR 10.)

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: degenerative joint disease, history of post-traumatic stress disorder, and major depressive disorder. (AR 10.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 10-11.)

The ALJ then found that the Plaintiff had the RFC to perform medium work, with the following limitations:

> Specifically, the Claimant is limited to simple, repetitive tasks. Claimant is precluded from extreme cold temperatures and vibrations, interaction with the public, jobs that require hypervigilance, fast-paced work and responsibility for the safety of others. The claimant has more than a slight limitation but is able to function satisfactorily with respect to the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public and the ability to respond appropriately to changes in the work setting. The claimant has a marginal education in a foreign country. He cannot read and write in English and he requires instructions provided in a foreign language.

(AR 12.) In determining the above RFC, the ALJ made an adverse credibility determination (AR 13) that is not challenged by Plaintiff here.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as a food assembler and material handler as actually or generally performed. (AR 17.) The ALJ, however, did find there were other jobs existing in significant numbers in the national economy that Plaintiff can perform, such as kitchen helper, industrial cleaner and toy assembler. (AR 17-18.)

Consequently, the ALJ concluded that Claimant is not disabled within the meaning of the Social Security Act. (AR 18.)

**DISCUSSION**

The ALJ decision must be reversed. The ALJ found that Plaintiff cannot read or write. The job descriptions in the Dictionary of Occupational Titles ("DICOT") for the jobs in the national economy that the VE testified Plaintiff can perform require Plaintiff to read and write. Neither the VE nor the ALJ provide any explanation for the variance between the VE's testimony and DICOT. The ALJ's step five determination is not supported by substantial evidence.

**I.  THE ALJ'S STEP FIVE FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

The Commissioner bears the burden at step five of the sequential process to prove that Plaintiff can perform other work in the national economy, given his RFC, age, education and work experience. 20 C.F.R. § 416.912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). The ALJ determined, based on the VE's testimony, that Plaintiff could perform the jobs of kitchen helper, industrial cleaner and toy assembler. (AR 18.)

The ALJ, however, also made the following determination as part of Claimant's RFC: "The claimant has a marginal education in a foreign country. He cannot read and write in English and he requires instructions provided in a foreign language." (AR 12.) The ALJ elsewhere found that the Claimant "has a marginal education and is able to communicate in English" (AR 17), although this statement is not explained and appears inconsistent with the RFC limitation that he requires instructions in a foreign language. The only other mention of Plaintiff's communication ability in the ALJ decision is the Claimant's testimony that he speaks very little English and worked in a donut shop but the job did not require English because the customers would point out what they wanted. (AR 12, 38.) Claimant testified at the hearing through a Cambodian interpreter. (AR 8.) He testified he worked as a helper in a tailor shop, but again English was not required because all he did was carry material from a truck into the shop. (AR 51.)

Literacy or education level is a vocational factor relevant only to the step five inquiry and not to the existence of a disability. Silveira, 204 F.4d at 1261 n.14; Elizondo v. Astrue, 2010

1 WL 3432261*6 (E.D. Cal., Aug. 31, 2010). The Commissioner bears the burden of proving a
2 claimant is literate. Silveira, 204 F.3d at 1261 n.14. Social Security regulations divide
3 education levels into four categories, two of which are relevant here. First is illiteracy, which is
4 defined as the "inability to read or write." 20 C.F.R. § 416.964 (b)(1). The regulation provides:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

A marginal education, by contrast, means 6th grade level or less. § 416.946 (b)(2).

The regulation goes on to say:

> <u>Inability to communicate in English</u>. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who does not speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally does not matter what other language a person may be fluent in.

20 C.F.R. § 416.964 (b)(5).

Plaintiff is illiterate under these regulations and the ALJ's finding that Plaintiff cannot read and write in English.

### A. The VE's Testimony Conflicts With DICOT And Fails To Offer An Explanation For The Variance

Plaintiff contends that the VE's testimony and ALJ's step five decision conflicts with DICOT. ALJs routinely rely on DICOT "in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); 20 C.F.R. §§ 404.1566 (d)(1), 416.966 (d)(1). DICOT raises a presumption

7

1  as to job classification requirements.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).
2  An ALJ may not rely on a vocational expert's testimony regarding the requirements of a
3  particular job without first inquiring whether the testimony conflicts with DICOT.  Massachi v.
4  Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p ("[T]he adjudicator has an
5  affirmative responsibility to ask about any possible conflict between that [vocational expert]
6  evidence and information provided in the [DICOT].")).  In order to accept vocational expert
7  testimony that contradicts DICOT, "the record must contain 'persuasive evidence to support
8  the deviation.'"  Pinto, 249 F.3d at 846 (quoting Johnson, 60 F.3d at 1435).  The ALJ must
9  obtain a reasonable explanation for the variance and then must decide whether to rely on the
10 VE or DICOT.  See Pinto, 249 F.3d at 847.  Failure to do so, however, can be harmless error
11 where there is no actual conflict or the VE provides sufficient support to justify any conflicts
12 with or variation from DICOT.   Massachi, 486 F.3d at 1154 n.19.
13       There is plainly a variance between the VE's testimony in this case and DICOT job
14 descriptions for the jobs identified by the VE.  The kitchen helper and toy assembler jobs both
15 require Language Level 1 language skills.  DICOT 318.687-010; 731.687-034.  DICOT defines
16 language Level 1 as follows:
17         Reading: Recognize meaning of 2,500 (two - or three - syllable)
18      words.  Read at a rate of 95-120 words per minute.  Compare similarities
19      and differences between words and between series of numbers.
20         Writing: Print simple sentences containing subject, verb, and object,
21      and series of numbers, names and addresses.
22         Speaking: Speak simple sentences, using normal word order, and
23      present and past tenses.
24 DICOT, Appendix C, 1991 WL 688702 (G.P.O.)
25    The industrial cleaner job requires Language Level 2 skills.  DICOT 381.687-018.
26 DICOT defines Language Level 2 as follows:
27         Reading: Passive vocabulary of 5,000-6,000 words per hour.  Read
28      adventure stories and comic books, looking up unfamiliar words in

8

|   |   |
|---|---|
| 1 | dictionary for meaning, spelling, pronunciation. Read instructions for |
| 2 | assembling model cars and airplanes. |
| 3 | Writing: Write compound and complex sentences, using cursive |
| 4 | style, proper end punctuation, and employing adjectives and adverbs. |
| 5 | Speaking: Speak clearly and distinctly with appropriate pauses and |
| 6 | emphasis, correct punctuation, variations in word order, using present, |
| 7 | perfect, and future tenses. |

DICOT, Appendix C.

The limitations in the RFC are plainly at variance with the language levels specified in the DICOT job descriptions for the jobs identified by the VE. The ALJ told the VE at the beginning of her testimony, "Ms. Fioretti, please make sure your testimony is consistent with the Dictionary of Occupational Titles. If you disagree with the [DICOT], tell me." (AR 53.) The VE, however, failed to do so or to provide any explanation for the conflict in her testimony with DICOT job descriptions. Here is the colloquy:

> ALJ Q: I want you to assume an individual of 51 years of age that has . . . between three and five years of education in a foreign country, can speak some English language, but it's not his language of choice and would have to have instructions given to him in a foreign language, cannot read or write in English language
>
> . . . .
>
> Would that type of person be able to do the jobs that were done by the claimant?
>
> A. No. I think those jobs would be eliminated.
>
> Q. Would there be other work available?
>
> A. Yes.
>
> Q. Such as?

| | |
|---|---|
| 1 | A. They (*sic*) would be work as a kitchen helper . . . . There would |
| 2 | be work as an industrial cleaner . . . . There would be a variety of assembly |
| 3 | work that could be done. An example would be toy assembler. |

(AR 54-55.) That was the end of Ms. Fioretti's testimony. There was no acknowledgment of any conflict with DICOT and no explanation for it. There was no analysis of the jobs identified and no evaluation of whether and to what extent the number of those jobs would be eroded by lack of education, language skills and the requirement that work instructions be translated into Cambodian. As a result, her opinion that Plaintiff can perform other jobs in the national economy carries no weight. Massachi, 486 F.3d at 1153-54; Guzman v. Astrue, 2010 WL 1929563, at *1 (C.D. Cal. May 10, 2010).

The ALJ's unexplained assertion that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles" is also plainly incorrect. Nor did the ALJ offer any explanation for the conflict between the VE's testimony and DICOT. Numerous cases have reversed ALJ decisions where the ALJ and the vocational expert failed to explain a deviation between a claimant's literacy and DICOT jobs requiring language levels of 1 and 2. See, e.g., Pinto, 249 F.3d at 843, 847-48; Her v. Astrue, 2010 WL 3069330, at *5 (E.D. Cal. Aug. 3, 2010); Lopez v. Astrue, 2010 WL 2674432, at *3 (C.D. Cal. July 1, 2010); Guzman, 2010 WL 192563, at *1; Mkhitaryan v. Astrue, 2010 WL 1752162, at *2 (C.D. Cal. April 27, 2010); Farias v. Astrue, 2010 WL 796768, at *6 (N.D. Cal. March 5, 2010); Diaz v. Astrue, 2009 WL176316, at *4 (C.D. Cal. Jan. 26, 2009); Mora v. Astrue, 2008 WL 5076450, at *3, *4 (C.D. Cal. Dec. 1, 2008); Turcios v. Astrue, 2008 WL 929122, at *9 (N.D. Cal. April 4, 2008).

Both the VE and the ALJ were in error for failing to explain the conflict between the VE's testimony and DICOT.

**B.     The Error Was Not Harmless**

The analysis, however, is not over. Any error in not providing an explanation for the variance between the VE testimony and DICOT could be harmless. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (error harmless if inconsequential to the ultimate non-disability

determination). The Commissioner, for example, correctly notes that illiteracy does not mean that a claimant is <u>per se</u> disabled. The Ninth Circuit has made clear that general descriptions of job requirements may be inapplicable in specific circumstances. <u>Massachi</u>, 486 F.3d at 1153 n.17. For example, Rule 202(g) of the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2 provides:

> While illiteracy or the ability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance . . . .

The Ninth Circuit has ruled, "A claimant is not <u>per se</u> disabled if he or she is illiterate. <u>Pinto</u>, 249 F.3d at 847. Clearly, any contention that illiteracy necessarily precludes all work is unfounded and contrary to law. The VE and ALJ, however, must explain the deviation between the limitation and the DICOT job description. <u>Massachi</u>, 486 F.3d at 1153; <u>Pinto</u>, 249 F.3d at 847. Here, they failed to do so.

According to the Commissioner, "Plaintiff's argument necessarily leads to the conclusion that <u>all</u> individuals who are illiterate in English would be 'disabled' from all work." (JS 6.) Plaintiff never made such a contention, nor did he ever say that there was an "irreconcilable" conflict between his illiteracy and the job identified by the VE, as alleged by the Commissioner. (JS 8, 9.) Plaintiff's argument was that "Neither the ALJ nor the VE provided reasons for the inconsistencies between the RFC and the jobs identified by the VE." (JS 6.) The Commissioner also is mistaken in asserting that Plaintiff's argument necessarily leads to the conclusion that all illiterate claimants are disabled. It leads only to the requirement that the VE and ALJ provide "persuasive evidence" for any variance from DICOT job requirements. The Commissioner does not acknowledge or deny the variance from DICOT nor does he acknowledge governing Ninth Circuit law. The Commissioner appears to be urging a rule that illiteracy should never trump a VE's testimony, based on a district court case from Missouri,

1  Lawson v. Apfel, 46 F. Supp. 2d 941, 947-48 (W.D. Mo. 1998).  Such a position does not
2  comport with Ninth Circuit law.
3       In Lawson, moreover, the district court noted that the VE adequately explained and
4  accounted for any variance from DICOT.  Id. at 948.  Here, there is no explanation at all, no
5  analysis of the identified jobs and of the extent of erosion in the number of such jobs due to
6  lack of education, language skills and the requirement for work instructions to be given in
7  Cambodian.  The Commissioner in the Joint Stipulation argues that, "even if Plaintiff did not
8  come into a job with the formal literacy required, he could achieve the necessary
9  understanding and competence to perform the kitchen helper, industrial cleaner, and toy
10 assembler jobs through one month of informal job training."  (JS 7:18-21 (emphasis added).)
11 This rationale, however, is speculative and unsupported by any evidence in the record and
12 nowhere appears in the VE's testimony or in the ALJ decision, and thus the Court cannot
13 consider it.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to
14 review the reasons the ALJ asserts").  In any event, there is no analysis of the jobs identified
15 by the VE and the extent to which the job base would be eroded by lack of education,
16 language skills and the requirement to have work instructions translated.
17      The Commissioner argues that Plaintiff's own past work as a food assembler and
18 material handler demonstrates that illiteracy causes no conflict with DICOT language level
19 classifications.  The problem with this argument is that the VE and ALJ found that Plaintiff no
20 longer could perform these jobs (AR 17), and there is no analysis of the three jobs identified by
21 the VE at step five, and no explanation of how Plaintiff could perform these jobs with his lack of
22 education and language skills and the requirement for work instructions in Cambodian.
23 Plaintiff was able to perform his prior jobs in a donut shop and a tailor shop because English
24 was not required.  DICOT job descriptions for the jobs identified by the VE require English.
25 The VE never analyzed how many of the jobs she identified did not require English.  The VE's
26 testimony that Plaintiff could perform all of the jobs identified by the VE in the numbers
27 specified is plainly not true and, in any event, unexplained.  There is a conflict between the
28

VE's testimony and DICOT that was not explained. Under Ninth Circuit law, the VE and the ALJ were required to explain the conflict. They failed to do so.

The Commissioner's last argument is that the ALJ specifically provided for Plaintiff's illiteracy in both his RFC and his hypothetical question to the VE by specifying that work instructions be given in a foreign language and therefore his reliance on the VE testimony was proper. (JS 9.) This argument is plainly contrary to Ninth Circuit law. The VE failed to explain or even acknowledge the conflict between her testimony and DICOT, nor indicate how much the job base would be eroded because of the requirement for foreign language work instructions. As a result, her testimony is not substantial evidence and the ALJ erred by relying on it.

The ALJ's step five decision was not supported by substantial evidence. The error was not harmless.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and REMANDED for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 24, 2012

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE